NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1295
_____

BRADLEY FLINT,
                              Appellant

v.

LANGER TRANSPORT CORPORATION, a corporation doing business in the State of
New Jersey; THE DOW CHEMICAL CORPORATION, a corporation doing business in
the State of New Jersey.; NOVA FABRICATING, INCORPORATED, a corporation
doing business in the State of New Jersey.; ABC CORP, I-III entities whose identity are
yet unknown.; VAN OMMEREN TANK TERMINALS GULF COAST,
INCORPORATED; VAN OMMEREN BULK HOLDINGS; VAN OMMEREN BULK
STORAGE, INCORPORATED; INTERNATIONAL MATEX TANK TERMINALS-
BAYONNE; INTERNATIONAL MATEX TANK TERMINALS, INCORPORATED;
JOHN DOES I-V, individuals whose identity is yet unknown; JEFFREY M. JACKSON.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-cv-03864)
District Judge: Honorable William H. Walls
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 26, 2012

Before: FUENTES, SMITH, and JORDAN, Circuit Judges

(Opinion Filed: May 3, 2012)
_____

OPINION OF THE COURT
_____

1

FUENTES, Circuit Judge:

Bradley Flint appeals from the District Court's entry of summary judgment against his state-law tort claims stemming from an on-the-job accident. We will affirm.

**I**

Because we write primarily for the parties, we recite only the facts essential to our disposition of the appeal.

In July 2004, plaintiff-appellant Bradley Flint and defendant-appellee Jeffrey Jackson were both working as truck drivers for Langer Transport Corp. ("Langer"), a motor carrier in the business of transporting liquid chemicals in tanker trailers. One of Langer's clients is the Dow Chemical Company ("Dow"), which manufactures the chemical Versene 100 XL ("Versene"). Dow stores Versene at a bulk liquid-storage facility in Bayonne, New Jersey. The Bayonne facility is operated by defendant-appellee International Matex Tank Terminals ("IMTT").

On July 6, 2004, Langer directed Jackson to carry a load of Versene for Dow from the IMTT Bayonne facility to a facility in Ontario, Canada. Although Versene is corrosive to aluminum, Langer directed Jackson to transport the load in an aluminum tanker trailer, not a stainless steel tanker trailer. Neither Langer, nor Jackson, nor IMTT perceived the problem, and Jackson proceeded across the Canadian border carrying the Versene in the aluminum tanker trailer. The Canadian facility determined that the Versene was contaminated and rejected the load. Jackson drove to a truck stop, inspected the tanker trailer, and noticed some dampness and discoloration on the back rib section. He notified Langer of the situation.

2

At that time, Flint had just finished carrying a load in a stainless steel tanker trailer and was located at the same Canadian truck stop as Jackson. Langer directed Jackson and Flint to cross back into the United States in their respective trucks and to transload the Versene from Jackson's aluminum tanker trailer into Flint's steel tanker trailer at a cleaning facility in Buffalo, New York. Upon arrival at the Buffalo cleaning facility, however, Jackson and Flint were informed that the facility was not equipped to clean Flint's trailer of the marine bio-chemical that it had been carrying. Therefore, Jackson and Flint continued to drive toward Langer in Jersey City, New Jersey. While they were on their way, a Langer dispatcher instructed them to find a place to transfer Jackson's load before a bigger problem developed. Jackson and Flint headed to a truck stop in Penbrook, New York. There, they ate dinner while it rained and then attempted to transload the Versene.

Flint was injured when he slipped and fell from the top of his tanker trailer during the transloading process. In order to transload the Versene, the men had to attach a hose to the top of Flint's trailer. Flint climbed up a ladder to the top of his trailer, which was slick with rain, and Jackson began to pass the hose up to him along the side of the trailer. As Flint was reaching for the hose, his hand slipped out of his rubber glove and he fell to the ground. Jackson drove him to the hospital. The following day, Jackson drove Flint's trailer to be washed out, and then transferred the load of Versene.

Though Flint recovered New Jersey workers' compensation benefits following his fall, he also brought this tort action against Langer, Dow, IMTT, and Jackson. Flint's claims against Dow and Langer were dismissed by stipulation. IMTT and Jackson each

moved for summary judgment. By opinion and order dated January 25, 2011, the District Court granted their motions. The District Court entered summary judgment in favor of IMTT because no reasonable jury could find that IMTT's alleged negligence was the proximate cause of Flint's injuries. It entered summary judgment in favor of Jackson because Flint's claim was barred by the exclusivity provision of the New Jersey workers' compensation statute, N.J. Stat. § 34:15-8.

Flint timely appealed.[1]

## II

On appeal, Flint argues that summary judgment was improper because genuine issues of material fact presented jury questions with respect to (1) whether the loading of Versene was an inherently dangerous activity, such that IMTT can be held liable for Langer's negligence; (2) whether IMTT's alleged negligence in allowing the Versene to be loaded into an aluminum tanker trailer was the proximate cause of Flint's injuries; and (3) whether Jackson was an "employee" of Langer within the meaning of New Jersey's workers' compensation scheme. We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Doe v. Indian River Sch. Dist., 653 F.3d 256, 275 n.7 (3d Cir. 2011) (citing Fed. R. Civ. P. 56(c)). Having reviewed the parties' submissions and having considered the well-reasoned analysis of the District Court's opinion in this matter, we discern no reason to disturb the District Court's decision.

---

[1] We have jurisdiction over this appeal under 28 U.S.C. § 1291. The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1332 and 1441.

4

First, we agree with the District Court that the "inherently dangerous activity" doctrine has no application to this case. In support of his claim against IMTT, Flint cites Majestic Realty Assocs., Inc. v. Toti Contracting Co., 153 A.2d 321, 326-27 (N.J. 1959), under which a landowner may be held liable for the negligent acts of an independent contractor he engages to do work if the landowner should recognize that the work is inherently dangerous or involves a peculiar risk of harm to others unless special precautions are taken. But Flint has adduced no authority to support the extension of this theory of liability to the shipper-carrier context, such that IMTT could be held liable for Langer's negligence.

Second, we agree with the District Court that no reasonable trier of fact could find that IMTT's alleged negligence, in allowing Versene to be loaded into an aluminum tanker trailer, was the proximate cause of Flint's injuries. Because IMTT cannot be held liable for Langer's negligent acts and Flint's own acts in climbing up on the wet trailer roof, those acts constitute superseding causes that break the chain of causation between the initial loading of the Versene and Flint's fall. Although a tortfeasor may be liable to a rescuer injured in the aid of those whom the tortfeasor's conduct has directly imperiled, no reasonable trier of fact could find that Jackson was in the type of imminent peril that foreseeably invites rescue. In sum, the risk that Flint would fall from the roof of his tanker trailer was unforeseeable to IMTT at the time that it loaded the Versene into Jackson's tanker trailer.

Finally, we agree with the District Court that Jackson may not be held liable in this action because he is Flint's fellow servant within the meaning of New Jersey's workers'

5

compensation law.  See N.J. Stat. § 34:15-8.  Flint has already recovered workers'

compensation benefits as a Langer employee.  Any reasonable trier of fact would be

bound to conclude that Jackson was also a Langer employee, since both men worked

exclusively for Langer, were subject to Langer's control, and performed jobs integral to

Langer's business.

## III

Accordingly, we will affirm the order of the District Court substantially for the

reasons set forth in the District Court's opinion.